UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROLAND JARVIS,

                Plaintiff,

        -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, POLICE OFFICER
ANTHONY CASSASE, POLICE OFFICER
DANIEL MARIA, POLICE OFFICER ROBERT
CABRERA AND SERGEANT CRANE,

                Defendants.

---

-CV- 1:20 - CV-8341

VERIFIED COMPLAINT AND JURY
TRIAL DEMAND

---

## NATURE OF THE ACTION

1.      This is a civil rights action brought by Plaintiff, Roland Jarvis, to seek relief

for the Defendants' violations of his rights secured under 42 U.S.C. §§ 1983, 1988, and the

rights secured under the Fourth, Fifth, and Fourteenth Amendments of the United States

Constitution.  Plaintiff seeks compensatory and punitive damages, and such other relief as

this Court deems equitable and just.

2.      The claims arise in part from an incident on May 4, 2018 in which Officers

of the New York City Police Department ("NYPD"), acting under color of state law,

intentionally and willfully subjected Plaintiff to assault, battery, deprivation of liberty,

excessive force, unlawful search and seizure, and serious bodily injury.  Plaintiff was

wrongfully arrested and illegally detained for one year, resulting in his loss of freedom,

loss of his residence, and loss of his personal belongings.  The case against Plaintiff was

dismissed on July 2, 2019 after a suppression hearing determined that the search and seizure was unlawful and that the testimony of the arresting officers was untruthful.

3.      Prior hereto on August 1, 2019, Plaintiff filed within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time and place where the injuries and damages were sustained, together with the Plaintiff's demands for adjustment thereof.  The Notice of Claim was duly served on the Comptroller of the City of New York, and a 50-h hearing was held on March 10, 2020.  Thereafter, the Comptroller for the City of New York refused or neglected for more than thirty (30) days and up to the commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

4.      Plaintiff, invoking the pendent jurisdiction of this Court, seeks monetary damages, as well as attorney's fees, for the violation of Plaintiff's constitutional rights as detailed below.

5.      The individual Defendants are sued in their individual capacities as well as in their capacities as employees of Defendant, the City of New York, and its NYPD.

## JURISDICTION AND VENUE

6.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

7.      Jurisdiction is founded upon 28 U.S.C. §§§§ 1331, 1342, 1367, 1343(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

8.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## JURY TRIAL DEMAND

9.      Plaintiff demands a trial by jury of all issues in this action that are so triable pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

10.     At all times relevant hereto, Plaintiff, Roland Jarvis, was and is a natural person and citizen of the United States, and a resident of the State of New York and New York City.

11.     Defendant the City of New York ("New York City") is a municipal corporation duly incorporated and authorized under the laws of the State of New York pursuant to § C13 of its Charter. New York City is authorized under the laws of the State of New York to maintain a police department, the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. New York City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

12.     At all relevant times, New York City and its NYPD hired, employed, supervised and controlled the individual Defendants.

13.     Defendant Police Officers Anthony Cassase, Daniel Maria, Robert Cabrera, and Sergeant Crane are and/or were at all times relevant herein, an officers, employees, and agents of the NYPD, a municipal agency of New York City. They are duly appointed and acting as police officers of the NYPD.  They are sued in their individual and official capacities.

14.     Upon information and belief, all named Defendant Police Officers were, at all relevant times herein, on duty with the NYPD on May 4, 2018.

15.     At all times relevant herein, all named Defendant Police Officers were acting under the color of state law in the course and scope of their duties and functioning as agents, employees and officers of New York City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, the individual Defendants have acted for and on behalf of New York City and/or the NYPD with the power and authority vested in them as officers, agents and employees of New York City and/or the NYPD and incident to the lawful pursuit of their duties as officers, employees and agents of New York City and/or the NYPD.

## STATEMENT OF FACTS

16.     Plaintiff, Roland Jarvis, is an African-American male and resident of the State of New York and New York City.

17.    Around 1:00 AM on Saturday, May 4, 2018, Mr. Jarvis was standing with a group of friends on the corner of Woodycrest Avenue and West 166th Street in the Bronx preparing to leave for a party.

18.    Mr. Jarvis lived closed by on University Avenue in the Bronx and he has lived in New York City his entire life.

19.    As Mr. Jarvis and his friends gathered, an unmarked NYPD car drove past the group, traveling north on Woodycrest Avenue.  The car then looped around the block again, and Mr. Jarvis observed four police officers dressed in plain clothes exit the vehicle and approach his group.  The four police officers never identified themselves.

20.    Mr. Jarvis and his friends began walking from the corner as the officers approached.  An officer called out to him to stop, but Mr. Jarvis knew that he had done nothing wrong and continued walking—he did not run or attempt to flee.   The officer then sped up his approach and tackled Mr. Jarvis from behind, scraping his face against the ground and causing back and shoulder injuries in the process.

21.    With the officer on top of him, Mr. Jarvis was scared and in pain.  Multiple officers then joined their colleague and handcuffed Mr. Jarvis.  After he was handcuffed, the officers searched him and recovered a small handgun that was secured in his underwear.  At that point, after he was arrest and the gun was recovered, the officers turned on their body cameras.

22.    Once Mr. Jarvis was on the ground, he was immediately arrested and transported to the police precinct.  He was charged in the Bronx with criminal possession

of a weapon and held on bail on Rikers Island until June 28, 2018, when he was writted to the Southern District of New York and charged by complaint with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  On July 9, 2018, a grand jury returned an indict against Mr. Jarvis and the case was assigned to the Honorable Paul A. Crotty for the Southern District of New York.  Mr. Jarvis was unable to meet bail and spent over a year in prison as he awaited trial.

23.     On October 19, 2018, Mr. Jarvis moved to suppress the gun seized from him on the date of his arrest as well as any post-arrest statements he made after he was illegally searched and seized.

24.     On April 30, 2019, Judge Crotty granted Mr. Jarvis' motion to suppress, finding that the Government failed to satisfy its burden to show there was probable cause to arrest Mr. Jarvis or reasonable suspicion to stop him and that the search of Mr. Jarvis violated his Fourth Amendment rights.

25.     On July 2, 2019, the case was dismissed when a suppression hearing determined that in addition to the illegal search, seizure and arrest of Mr. Jarvis, that the arresting officers' testimony was untruthful.  The officers claimed under oath that Mr. Jarvis "appeared to be smoking marijuana and drinking alcohol on the street," and that that was the reason for the arrest.

26.     On or around August 1, 2019, Plaintiff filed a sworn Notice of Claim stating, among other things, the time and place where the injuries and damages were sustained, together with the Plaintiff's demands for adjustment thereof.  This Notice of

Claim was duly served on the Plaintiff's behalf on the Comptroller of the City of New York.

27.    On or around March 10, 2020, a 50-h hearing was held for the Notice of Claim that the Plaintiff filed on or around August 1, 2019.  Thereafter, the Comptroller for the City of New York refused or neglected for more than thirty (30) days and up to the commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

28.    The conduct of the individual Defendants in unlawfully restraining, searching, seizing, assaulting and arresting Mr. Jarvis proximately caused physical, emotional and financial injury to him, as well as serious physical and emotion pain and suffering, mental anguish, shock, fright, physical pain, humiliation, embarrassment and deprivation of Plaintiff's constitutional rights.  Mr. Jarvis suffered trauma, debasement and humiliation as a result of being assaulted and arrested, unlawfully, without any cause.

29.    At all times relevant herein, the individual Defendants acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Plaintiff's rights and physical and mental well-being by unlawfully restraining, seizing, and assaulting Plaintiff.

30.    The actions of the individual Defendants, as set forth herein, were the result of the failure of the NYPD to properly train, supervise and discipline its officers, including Defendant Police Officers Anthony Cassase, Daniel Maria, Robert Cabrera, and Sergeant Crane. This failure to train, supervise and discipline is a consequence of the deliberate

policies and practices of Defendant New York City and its NYPD. These policies and practices are in part responsible for the unconstitutional, wrongful, deliberate, malicious, negligent, careless and intentional actions of the individual Defendants.

31.     At all relevant times herein, Defendant New York City, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused the violation of his rights.

32.     Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

33.     The constitutional abuses and violations by Defendant New York City, through the actions of its NYPD and all other named Defendant police officers, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant New York City, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants; and (c) to adequately and properly investigate citizen complaints of police misconduct, and instead, acts of misconduct were tolerated by New York City of New York.

34.     Upon information and belief, Defendant New York City has, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned a *de facto* policy, practice, and/or custom of unlawfully interfering with and/or using excessive force against individuals.

35.     Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

36.     Defendants acted with deliberate indifference to the constitutional rights of Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

37.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from continuing their unlawful policies, practices, and/or customs which have directly and proximately caused such constitutional abuses.

38.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: detaining innocent persons without cause in order to meet "productivity goals," or arrest quotas; detaining individuals for professional

advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting those individuals.

39.    The Defendant City's knowledge of prior incidents in which they were involved in unprivileged stops, detentions, searches, arrests and prosecutions was such that the Defendant City was on notice that, barring additional training, discipline and/or supervision, the Individual Defendants would violate other individuals' constitutional rights going forward, which they did to Plaintiff here. The prior incidents include, but are not limited to, the number and substance of other misconduct allegations made to and investigated by precinct-level, borough-level, department-level and municipal-level bodies, including but not limited to CCRB, IAB, borough/precinct/division/unit integrity officers, and more, and the findings made and actions taken by the same relative to these Individual Defendants. In addition, the Defendant City's knowledge that prior incidents reasonably required additional training, supervision and/or discipline for these Individual Officers is demonstrated by the number, substance and resolution of misconduct allegations made against these Individual Defendants in pre-litigation notices of claim and litigation pleadings. The prior incidents also include instances where allegations of unlawful stops, detention, searches and more were successfully litigated against the

Individual Defendants in the context of criminal prosecutions to suppress evidence or statements.[2]

40.    To the extent the City Defendant purports to have a policy designed to adequately observe patterns of individual-officer misconduct to identify when training, discipline and/or supervision of a particular officer is required to protect the general public and/or its individual members from future rights violations by that officer, Plaintiff alleges that the policy does not operate to adequately identify and address patterns as it purports to do. Among other reasons, this is because the method by which the City allegedly implements the policy is paper-based, fails to centralize misconduct allegations made to various investigative bodies in any one place, fails to merge the dispositions of misconduct-allegation investigations-or even the most basic factual allegations relating to the complaint-onto individual investigative bodies' indices designed for that purpose, and more. In summary, the City purports to have a reasonable and sincere policy meant to allow it as a modern managerial authority to meaningfully track troublesome patterns of risk in its employees, but the policy does not come close to sincerely permitting the City to achieve that goal.[3]

-----

[2] See, e.g.. Using Data from Lawsuits and Legal Claims Involving NYPD to Improve Policing, OIG NYPD Report, April 2015; NYPD Response, June 20, 2015, available at https://www1.nvc.gov/site/oignvpd/reports/reports.page ((last accessed Sept. 3, 2020); see 2019 Assessment of Litigation Data Involving NYPD, OIG NYPD Report, July 29, 2019, available at https://www1.nyc.gov/site/doi/oignypd/reports.page (last accessed Sept. 3, 2020).

[3] See, e.g.. Addressing Inefficiencies in NYPD's Handling of Complaints, OIG NYPD Report, Feb. 7, 2017 (last accessed Sept 3. 2020); NYPD Response, May 8, 2017, available at https://www1.nvc.gov/site/oignvpd/reports/reports.page (last accessed Sept 3. 2020).

41.     The City's inefficient, insincere and therefore deliberately indifferent approach to detecting its employees' pattern-based risks of future commissions of constitutional-rights violations is further demonstrated by its failure to perform any investigation or by its performance of an insufficient investigation into officer-misconduct allegations when made. Even assuming arguendo that the City had a way to meaningfully track the substance, frequency and relative similarities and merit of misconduct allegations leveled against a particular officer during the history of his/her municipal employment, the City Defendant so often fails to perform any investigation or any sufficient investigation into officer-misconduct allegations. The same City Defendant that purports to have a policy of looking for misconduct patterns evincing risks that its personnel will commit constitutional violations against people going forward lacks a regular mechanism through which to verify that a misconduct allegation-whether made by a member of the service or a member of the public-was investigated at all or with a modicum of seriousness by a responsible government actor at unit, division, precinct, borough, agency, municipal or other level. Accordingly, even if the City has a more systematic misconduct-pattern-detection policy or system in place, which Plaintiff alleges the City does not, the hypothetical policy or system would in practice be inadequate without the raw material (i.e., meaningful individual misconduct allegation investigations) necessary for such pattern-detection efforts to work.[4]

---

[4] See, e.g., Addressing Inefficiencies in NYPD's Handling of Complaints, OIG NYPD Report, Feb. 7, 2017 (last accessed Sept 3. 2020).

42.     Another way in which the City's officer-misconduct-complaint investigation practices exhibit deliberate indifference to the detection of patterns requiring managerial response to protect against future rights violations because even agency-specific misconduct-allegation indices fail to offer any clear way to quickly synthesize a picture of a subject officer's historical patterns of misconduct allegations, related investigative findings and municipal action. For example, CCRB and IAB and lower-level integrity-control misconduct-allegation and investigative records are maintained separately from one another and not merged into one central document. As another example, in many instances an integrity-control entity's records specific to that entity fails to serve as meaningful quick-reference records for anything because the substantive detail of a misconduct complaint, whether it was ever investigated, its ultimate resolution, and more are never centralized anywhere. Setting aside the intra-entity inefficiency occasioned by this approach, this approach also assured inter-agency inefficiency in detecting officer-specific misconduct-allegation and misconduct-investigation patterns as they may be demonstrated through a holisitic and complete review of various integrity-control entities' work.

43.     The City's officer-misconduct-complaint investigation practices further fail to fully address pattern-derived obvious risks that an officer will violate other individuals' rights in the future because relevant municipal policy contemplates only that officers accused of independently initiated and direct misconduct should be treated as having the potential for demonstrating patterns of misconduct rising to the level of constitutional risk.

This ignores that supervisory officers who are implicated in issuing unconstitutional directions to subordinates or who are implicated in incorrectly approving subordinates' unconstitutional arrests or other actions can demonstrate equivalent pattern-derived constitutional risks as is true for patterns that are noted in a direct officer offender. The same is true that subordinate officers who are regularly implicated in failing to intervene to stop a colleague's or supervisor's unconstitutional actions can pose a problematic pattern-derived risk of constitutional damage to the public. Yet the City's misconduct-allegation investigation policy does not squarely address officers' involvement in supervisory or failure-to-intervene rights violations with the same equivalence as direct violations despite the fact that a reasonable managerial authority would treat them, when tracked, as able to similarly establish notice of future constitutional-violation risks.

44.     The City's unconstitutional customs and policies which may be inferred from repeated occurrences of similar wrongful conduct as discussed above is also documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York, New York State courts, and Notices of Claims filed with the Comptroller's Office. The City is on clear notice that its policies and customs have caused and continue to cause chronic constitutional violations from (1) the number of Civil Rights Lawsuits filed against it and its law enforcement officers (which, on information and belief, the City does not adequately track in order to identify problem precincts, divisions, units and/or problem officers), (2) the number of Notices of Claim ("NOC") filed against the City and its law enforcement officers and the City's inadequate responses to

those NOCs, (3) the number of Complaints filed with the Civil Complaint Review Board ("CCRB") against the City's law enforcement officers, (4) City Council hearings, (5) newspaper reports, (6) criminal cases resulting in declined prosecutions and dismissals, (7) judicial rulings suppressing evidence and finding officers incredible as a matter of law; and more. Taken together, all of these red flags demonstrate that a troubling number of NYPD officers unlawfully stop, search and seize New Yorkers without reasonable suspicion or probable cause, bring charges against New Yorkers with no legal basis, perjure themselves in charging instruments and through testimony, use excessive force against individuals, and fail to intervene in and report the obviously illegal actions of their fellow officers, *inter alia*.

45.    Policymaking officials of the City and NYPD implemented plainly inadequate policies, procedures, regulations, practices, and customs, including but not limited to the following: 1) arresting persons known to be innocent in order to meet "productivity goals"; 2) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet "productivity goals"; 3) failing to supervise, train, instruct and discipline police officers thereby encouraging their misconduct and exhibiting deliberate indifference towards the constitutional rights of persons within the officers' jurisdiction; 4) discouraging police officers from reporting the corrupt or unlawful acts of other officers; 5) retaliating against officers who report police misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper

supervision. By failing to properly train, supervise and discipline its employees, agents, and servants, the City effectively encourages illegal, immoral, and unprofessional behavior.

46.     Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

47.     Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite such notice, Defendant the City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Plaintiff's constitutional rights. For decades, the City has been on notice that certain precincts and certain police officers are disproportionately responsible for civil rights lawsuit liability. Nonetheless, the City has failed to take action to track such information in order to hold precincts or officers accountable through disciplinary action or programs of reform. See, e.g., _Wyatt v. Cole_, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 lawsuits is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

48.     One of the more recent examples of the City failing to make use of Civil Rights Lawsuit data to improve law enforcement's record vis-a-vis the protection of individuals' rights occurred in 2014 when the City Council considered whether the NYPD

should have to produce quarterly reports about complaints against the department. Among other things, the reports would indicate whether an officer who was the subject of a complaint had "previously been the subject of a civil action or actions alleging police misconduct" so that tailored attention could be given to an open and obvious existing and/or developing problem.[1]

49.    The City's failure to compile and employ Civil Rights Lawsuit data in this manner is surprising when one considers the trove of data that this represents. For example, between 2009 and 2014, the City paid an average of $ 33,875 per case to resolve well over 10,000 cases.[2] Similarly, the City Comptroller has reported that the City of New York's payments to resolve allegations of misconduct by members of the NYPD has risen from $ 99 million to $ 217 million in between 2005 and 2014. While such numbers relate to the NYPD as a whole, they reflect that the City had actual knowledge that its police department was routinely engaging in unconstitutional and unlawful conduct.[3]

---

[1] See Azi Paybarah, Council Seeks Regular Reports on NYPD Complaints. May 5, 2014, at https://www.politico.com/states/new-york/city-hall/story/2014/05/council-seeks-regular-reports-on-nypd-complaints-012720 (last accessed Sept. 3, 2020).

[2] See Caroline Bankoff, The City Has Paid Almost Half a Billion Dollars in NYPD-Related Settlements Over the Past 5 Years, Oct. 12, 2014, available at: https://nymag.com/intelligencer/2014/10/428-million-in-nypd-related-settlements-paid.html (last accessed Sept. 3, 2020).

[3] See Office of the Comptroller, Claims Report: Fiscal Years 2013 and 2014, August 2015, available at https://comptroller.nyc.gov/wp-content/uploads/documents/Claims_Report_FY13_and_FY14.pdf (last accessed Sept. 3, 2020).

50.     In 2009, the City Council noted that study of a large number of cases might well reveal patterns of misconduct against which the NYPD could and should take systematic management action, but again, this elicited no significant change in the City's methods.[4]

51.     By failing to keep track of crucial data, which could save lives as well as taxpayer money, the City has created a system in which lawsuits are treated as unrelated to their potential deterrent effect.

52.     The City is also on notice that it employs policies and practices which are presently insufficient to identify law enforcement's chronic violations of individuals' civil rights because recent Civil Rights Lawsuits and Criminal Prosecutions amply document systemic problems which the NYPD resists addressing, as evidenced by its opposition to reporting protocols and officer recidivism analyses. By way of example:

a.   In Schoolcraft v. City of New York, 103 F. Supp. 3d 465 (S.D.N. Y. 2015), the Court found that evidence showed an issue of fact as to whether the City had a custom of retaliation against whistle blowers. Among the record evidence was expert witness testimony about a "blue wall of silence," which is a "police culture that prizes intense loyalty, unity and solidarity among police officers to the extent that any officer reporting the wrongdoing of another officer would be in violation of the code and subject to retaliation." In addition, IAB-run focus groups had revealed that "physical fear surfaced several times [in participants] during the discussion on reporting corruption."

---

[4] See Christopher Dunn and Robert Perry, Reporting by The New York City Corporation Counsel on Civil Damage Claims Related to Police Misconduct, Dec. 11, 2009, available at http://www.nyclu.org/content/reporting-new-york-city-corporation-counsel-civil-damage-claims-related-police-misconduct (last accessed Sept. 3, 2020).

b.  In <u>Colon v. City of New York,</u> No. 09 Civ. 0008 (JBW), 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009), the Court denied the *City*'s motion to dismiss the civil rights plaintiff's <u>Monell</u> claim against it for insufficient pleading, finding that: Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.[5]

c.  In <u>People v. Arbeen</u>v. Index No. 6314-2008 (N.Y. Sup. Ct., Kings County), former undercover NYPD narcotics officer Steve Anderson testified about the frequency with which he observed a law enforcement officer planting narcotics on a suspect in order to make an arrest that would help the officer meet his or her monthly quota of arrests. In order to achieve this, according to Anderson, an officer would carry a stash of narcotics to plant on innocent civilians, a practice that he called "attaching bodies." According to Anderson, "It was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators. Seeing it so much, it's almost like you have no emotion with it. The mentality was that they attach bodies to it, they're going to be out of jail tomorrow anyway, nothing is going to happen to them anyway. That kind of came to me and I accepted it being around so long, and being an undercover."[6] In response to the testimony, the presiding judge, New York Supreme Court Justice Gustin Reichbach stated, "Having been a judge for 20 years, I thought I was not naive regarding the reality of narcotics enforcement." But even the Court was shocked, not only by the seeming pervasive scope of the misconduct, but even more distressingly by the seeming casualness by which such conduct is employed.

---

[5] In response, NYPD Commissioner Raymond Kelly said that when this misconduct "happens, it's not for personal gain. It's more for convenience." <u>See</u> Loren Yaniv and John Marzulli, <u>Kelly Shrugs Off Judge Who Slammed Cops</u>, *New York* Daily News, December 2, 2009, available at http://www.nvdailynews.com/news/crime/police-commissioner-kellv-shrugs-judge-slammed-cops-article-1.433710 (last accessed Sept. 3, 2020).

[6] <u>See, e.g.</u>, John Marzulli, <u>We Fabricated Drug Charges Against Innocent People to Meet Arrest Quotas. Former Detective Testifies</u>, Oct. 13,2011, at http://www.nydailynews.com/crime/fabricated-drug-charges-innocent-people-meet-arrest-quotas-detective-testifies-article-1.963021 (last accessed Sept. 3, 2020); Jim Dwyer, <u>The Drugs? They Came From The Police</u>, Oct. 13,2011, at https://www.nytimes.com/2011/10/14/nyregion/those-drugs-they-came-from-the-police.html (last accessed Sept. 3, 2020).

d. In <u>People v. Eiseman</u>. Index No. 2999-2010 (N.Y. Sup. Ct., *New York* County), NYPD Sergeant William Eiseman pled guilty to perjury and falsifying police records, admitting to faking a marijuana case against one man and cocaine-related charges against another - and training subordinate officers to falsify paperwork to sidestep legal safeguards. <u>See, e.g.,</u> <u>NYPD Sgt. William Eiseman Pleads Guilty to Lying Under Oath in Plea Deal</u>, New York Daily News, June 27, 2011, available at http://www.nydailynews.com/news/crime/nypd-sgt-william-eiseman-pleads-guilty-lying-oath-plea-deal-article-1.129288 (last accessed Sept. 3, 2020).

e. In or around 2007, the United States Attorney's Office investigated the 109th precinct of the NYPD for "planting drugs on suspects and stealing cash during gambling raids." The 109th precinct is believed to be involved in a practice known as "flaking" wherein police officers plant drugs on suspects in order to bring legitimacy to the arrest. According to the Assistant United States Attorney Monica Evans, members of the 109th Precinct "maintained a small stash of drugs in an Altoids tin for this purpose."[7]

f. In <u>Bryant v. City of New York</u>, Index No. 22011/2007 (N.Y. Sup. Ct., Kings County), a jury found that the NYPD had a policy "regarding the number of arrests officers were to make that violated [the] plaintiffs' constitutional rights and contributed to her arrest."[8]

g. In <u>MacNamara v. City of New York</u>, No. 04 Civ. 7922 (RJS) (JCF) (S.D.N.Y), Docket No. 542, the Court granted the Plaintiffs' motion to approve a class-wide settlement reached in a case demonstrating evidence that police officers systematically perjured themselves in sworn statements in order to justify the unlawful mass arrests of 1,800 demonstrators during the 2004 Republican National Convention.

h. In <u>White-Ruiz v. City of New York,</u> *983 F. Supp. 365, 380 (S.D.N.Y. 1997),* the Court stated that it found the Mollen Commission's July 7, 1994 report investigating "Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department" to be "entirely reliable." Among other things, the Mollen Commission found that NYPD "[o]fficers who report misconduct are ostracized and harassed; become targets of complaints and even physical threats; and are made to fear that they will be left alone on the streets in a time of crisis. This draconian enforcement of the

---

[7] John Marzulli, <u>Claims of Corruption in Kings Precinct Put Crooked Cop's Sentencing on Hold</u>, N.Y. Daily News, June 20, 2008, available at https://www.nydailynews.com/news/crime/claims-corruption-queens-precinct-put-crooked-sentencing-hold-article-1.296352 (last accessed Sept. 3, 2020).

[8] <u>See also</u> <u>Despite Laws and Lawsuits, Quota-Based Policing Lingers</u>, NPR News, April 4, 2015, https://www.npr.org/2015/04/04/395061810/despite-laws-and-lawsuits-quota-based-policing-lingers (last accessed Sept. 3, 2020).

code of silence fuels corruption because it makes corrupt cops feel protected an invulnerable."

i.   In <u>Ariza v. City of New York</u>, *No. 93 Civ. 5287 (CPS), 1996 WL 118535,* at *6 (E.D.N.Y. Mar. 7, 1996), the Court denied the defendants' summary judgment motion on the question of whether the City had a custom of retaliation against police corruption whistle blowers, stating that a reasonable jury could plausibly find that the plaintiff's evidence "establishes both a widespread usage and a failure to train in the police department."

53. These cases are but a small drop in the ocean of Civil Rights Cases, Claims, Criminal Prosecutions, and revelations made in these contexts which support that the NYPD has been shown over and over to have a culture of unconstitutional customs and practices, specifically with regard to the a culture of officers lying under oath, falsely swearing out criminal complaints or otherwise falsifying or fabricating evidence, and covering for one's colleagues when they engage in this misconduct, resulting in individuals suffering false arrest, false imprisonment, malicious prosecution, and other constitutional torts.

54.  It is thus manifestly clear through the litigation brought in federal and state courts in the City that even if the City was not the intentional architect of polices and routinized conduct causing chronic violations of individuals' constitutional rights, it was certainly on notice of the practice. By failing to take any meaningful corrective steps and instead choosing to put out fires whenever they break out (which is often), the City has ratified, endorsed, and otherwise communicated its acceptance of these policies and customs to the officers it employs.

55. The City's opposition to or refusal to consider adopting more robust data collection, analysis and reporting practices, despite knowing those practices' benefits, has been longstanding.

56. Moreover, on information and belief, and in addition to the Defendant City's lack of an appropriate systematic approach to such problems, Defendant City was also aware, prior to the incident, that the Individual Defendants named here lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant the City of New York has retained these officers, and failed to adequately train and supervise them.

57. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

58. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and were in violation of 42 U.S.C. § 1983, as well as the rights guaranteed to Plaintiff under the laws of New York state.

59. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

60. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices,

procedures and the rules of the Defendant the City of New York and the NYPD, all under the supervision of ranking officers of said department.

61. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

62. As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CAUSE OF ACTION

### EXCESSIVE FORCE
(42. U.S.C. §1983, Fourth and Fourteenth Amendments)

63.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "62" as if more fully set forth at length herein.

64.     By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of his right to be free from excessive force in the course of an arrest as required by the Fourth and Fourteenth Amendments, the individual Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

65.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION

### ASSAULT, BATTERY, DEPRIVATION OF LIBERTY
(42. U.S.C. §1983, Fifth and Fourteenth Amendments)

66.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "65" hereinabove as if more fully set forth at length here in.

67.     The acts of the individual Defendants, under color of state law, in arresting Plaintiff, including physically assaulting and battering him, were racially motivated, undertaken without lawful justification, taken with deliberate indifference to Plaintiff's rights, and were designed to, and did, cause specific and serious bodily harm, pain and suffering to Plaintiff in violation of his constitutional rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Through these actions, Defendants are liable for violation of 42. U.S.C. §1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

68.     By their conduct, as described herein, Defendants are liable to Plaintiff under 42. U.S.C. §1983 for the violation, under color of state law, of the constitutional right to be free from any deprivation of liberty without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution.

69.     As a consequence of the individual Defendants' actions, Plaintiff has suffered violations of his due process rights under the Fifth and Fourteenth Amendments. Plaintiff has fear and apprehension that he will, again, be subject to similar unlawful acts by Defendants.

70.     Further, the individual Defendants failed to intervene in order to prevent their co-defendants from violating the rights of Plaintiff.

71.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION

### FALSE ARREST
### (42. U.S.C. §1983, Fourth and Fourteenth Amendments)

72.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "71" as if more fully set forth at length herein.

73.     By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of his right to be free from unreasonable searches and seizures as required by the Fourth and Fourteenth Amendments, Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

74.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION

### MALICIOUS PROSECUTION
### (42. U.S.C. §1983, Fourth and Fourteenth Amendments)

75.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "74" as if more fully set forth at length herein.

76.     By their conduct, as described herein, and acting under color of state law, Defendants are liable to each Plaintiff under 42 U.S.C. § 1983 for violation, of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

77.     Defendants' unlawful actions were done willfully, knowingly, with malice and with specific intent to deprive Plaintiff of his constitutional rights. The prosecution by Defendants of Plaintiff constituted malicious prosecution in that there was no basis for Plaintiff's arrest, yet Defendants continued with the prosecution.

78.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, severe physical, mental and emotional injury along with severe pain, mental anguish, suffering, humiliation and embarrassment.

## FIFTH CAUSE OF ACTION

### MONELL CLAIM

79.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "78" hereinabove as if more fully set forth at length herein.

80.     At all relevant times herein, Defendant New York City, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused the violation of such rights.

81.     Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in New York City.

82.     The constitutional abuses and violations by Defendant New York City, through the actions of its Police Department and all named Defendants, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant New York City, including but not limited to the failure: (a) to adequately supervise and train its officers and agents, including Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants; (c) to adequately screen

prospective employees in its hiring process; and (d) to adequately and properly investigate citizen complaints of police misconduct, and instead, acts of misconduct were tolerated by New York City of New York.

83.     New York City is on clear notice that its policies and customs have caused and continue to cause chronic constitutional violations. This notice is evidenced by, *inter alia*, (1) the number of Civil Rights Lawsuits filed against it and its law enforcement officers (which, upon information and belief, the City does not adequately track in order to identify problem precincts and/or problem officers), (2) the number of Notices of Claim ("NOC") filed against the City and its law enforcement officers and the City's inadequate responses to those NOCs, (3) the number of Complaints filed with the Civil Complaint Review Board against the City's law enforcement officers, (4) newspaper reports, (5) criminal cases resulting in biased prosecutions and dismissals.  Taken together, all of these red flags demonstrate that a troubling number of NYPD officers unlawfully search and seize New York citizens without probable cause, bring charges against  New York citizens with no legal basis, perjure themselves in charging instruments and through testimony, use excessive force against individuals, and fail to intervene in and report the obviously illegal actions of their fellow officers.

84.     Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

85.     Defendants have acted with deliberate indifference to the constitutional rights of Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer severe physical, mental and emotional injury and pain, in addition to severe mental anguish, suffering, humiliation and embarrassment.

86.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from continuing their unlawful policies, practices, and/or customs which have directly and proximately caused such constitutional abuses.

87.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION

## VIOLATION OF PLAINTIFF'S RIGHTS UNDER NEW YORK STATE LAW
(New York State Law)

88.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "87" hereinabove as if more fully set forth at length herein.

89.     By the actions described above, each and every Defendant, jointly and severally, has committed the following wrongful acts against Plaintiff, which are tortious under the Constitution and laws of the State of New York:

a) assault and battery;

b) false arrest;

c) false imprisonment; and

e) violations of rights otherwise guaranteed under the Constitution and the laws of the State of New York

90.     In addition, the City was negligent in its hiring, screening, training, supervision and retention of the Defendant Police Officers Cassase, Maria, Cabrera, and Sergeant Crane.

91.     The foregoing act and conduct of the Defendants were a direct and proximate cause of injury and damage to Mr. Jarvis and violated the statutory and common law rights as guaranteed to him by the Constitution and the laws of the State of New York.


## SEVENTH CAUSE OF ACTION

### ASSAULT AND BATTERY
(New York State Law)

92.     Plaintiff repeats and reiterates all of the allegations contained in paragraphs 1 through 91 as if fully set forth herein.

93.     The individual Defendant Police Officers, while in the scope of their employment, maliciously, willfully and intentionally committed assault and battery upon the Plaintiff with apparent ability and objective to cause imminent harm and offense bodily harm, subjecting Plaintiff to physical injury, harm and humiliation in the course of falsely arresting him.

94.     The individual Defendant Police Officers intentional willfully and maliciously battered plaintiff, when they, in a hostile and offensive manner struck plaintiff

without his consent and with the intentions of causing harmful and/or offensive bodily contact to the Plaintiff and caused such battery.

95.     The acts of the individual Defendant Police Officers were the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed Plaintiff by the laws and Constitution of the State of New York.

96.     As a result of the aforesaid, Plaintiff sustained the injuries and damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION

### FALSE ARREST AND FALSE IMPRISONMENT
(New York State Law)

97.     Plaintiff repeats and reiterates all of the allegations contained in paragraphs 1 through 96 as if fully set forth herein.

98.     At no time did Plaintiff commit any act or offense for which an arrest may be lawfully made.

99.     The false criminal charges, false arrest and wrongful imprisonment were without any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

100.     As a result of the aforesaid, Plaintiff sustained the injuries and damages hereinbefore alleged.

## NINTH CAUSE OF ACTION

### NEGLIGENCE
(New York State Law)

101.    Plaintiff repeats and re-alleges paragraphs 1 through 100 above as if fully set forth herein.

102.    That the Defendants, herein, their agents, servants and/or employees were negligent in the

(a) hiring and retaining of a person or persons who was/were unfit to serve as custodial, correctional, court, legal, clerical and/or police officers and who it knew or should have known had negligent, reckless, careless or dangerous propensities and a lack of proper temperament, organization, reliability, responsibility, carefulness and prudence; in that the City of New York, its agents, servants and/or employees failed to exercise reasonable precautions in employing and retaining said officers by failing to properly investigate their background and employment records and/or having knowledge of said records, thereafter hiring and/or retaining said officers; and,

(b) in the training and instruction of its custodial, correctional, court, legal, clerical and/or police officers by not exercising care in instructing them as to their deportment, duties, behavior and conduct as police officers and representatives of the City of New York and in the training and instruction among other things, on the proper use of their nightsticks, handcuffs, etc. and/or method of arrest, detainment and/or release;

(c) in failing to use such care in the performance of custodial, correctional, court, legal, clerical and/or police officer's duties as a reasonably prudent and careful custodial, correctional, legal, court, clerical or police officer would have used under similar circumstances including but not limited to, improper and negligent use of or carrying out of their duty which a police officer of ordinary procedure would not have done all without any negligence on the part of the claimant contributing thereto.

103.   That by reason of the foregoing, the Plaintiff was caused to be falsely arrested and illegally deprived of his liberty and civil rights; was caused to suffer imprisonment and confinement; was caused to be assaulted and battered by the Defendant, the City of New York, its agents, servants and/or employees, thereby sustaining conscious pain and suffering, severe, serious and permanent personal injuries; was obliged to undergo medical care and treatment; was incapacitated from his usual vocation; suffered great shock to his nervous system; incurred legal expenses.

104.   That the Plaintiff Roland Jarvis in no way provoked or encouraged the aforesaid physical battery and other tortious conduct by the individual Defendants, and further that the Defendants' physical contacts with said Plaintiff were not justified by any privilege held by the Defendants or any probable cause or reasonable suspicion of any criminal conduct by said Plaintiff, and said Plaintiff was not engaged in any unlawful activity whatsoever.

105.    That if certain of the individual Defendants did not themselves engage in tortious conduct or arrest Plaintiff, said individual Defendants failed to prevent the arrest and abuse of the said Plaintiff and other tortious conduct by the other individual Defendants despite having a duty to do so, said failure to act being either intentional and/or in gross disregard of the civil rights of said Plaintiff.

106.    That the aforesaid acts and/or omissions of the individual Defendants were pursuant to an agreement and/or conspiracy among them to, while acting under color of state law, violate the civil rights of the Plaintiff.

107.    That the aforesaid acts and/or omissions of the individual Defendants caused the Plaintiff social stigma, damage to his reputation, mental anguish and distress, and further that said Plaintiff was caused to be confined and imprisoned as a result of said acts and/or omissions.

108.    That the aforesaid acts and/or omissions of the individual Defendants violated the Plaintiff's civil rights, that are secured by, *inter alia*,  the U.S. Constitution and New York state law including, but not limited to: the right to be free from arbitrary and groundless arrest; the right to be free from cruel and unusual punishment and summary punishment; the right to free in his person from unlawful restraints on his movement; the right to not be subjected imprisonment without due process of law and the right to enjoy equal protection of the laws; the right to have all the legal rights enjoyed by Caucasian persons, including the right to be secure in his person and/or property; the right to have persons entrusted with legal authority to act to enforce his civil rights to either act to enforce

such rights or be themselves adjudicated as having violated the Plaintiff's civil rights and the right to be free from conspiracies to violate his civil rights by those acting under color of state law.

109.    That as a result of the foregoing, the Plaintiff sustained the injuries and damages hereinbefore alleged.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiff respectfully requests the following relief:

A. An order entering judgment for Plaintiff against Defendants on each of his claims for relief;

B. Awards to Plaintiff for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth, and Fourteenth Amendment rights of Plaintiff, the amount to be determined at jury trial, which Plaintiff respectfully demands pursuant to FRCP 38;

C. Awards to Plaintiff of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiff, the amount to be determined at jury trial, which Plaintiff respectfully demands pursuant to FRCP 38;

D. Awards to Plaintiff of nominal damages against Defendants on the basis of the constitutional violations herein alleged in the event that compensatory and/or punitive damages are unavailable on certain claims;

E. Awards to Plaintiff for the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1920 and 1988; and

F. Such further relief as this Court deems just and proper.

DATED:     New York, New York
           September 10, 2020

*Walter John Thompson*

_____
Walter John Thompson, Esq.
Thompson Law, P.C.
250 West 57th Street, Suite 1632
New York, NY 10107
(646) 670-1672
*Attorney for Plaintiff*